[Cite as *In re J.A.*, 2015-Ohio-4409.]

IN THE COURT OF APPEALS OF OHIO
SIXTH APPELLATE DISTRICT
LUCAS COUNTY

In re J.A.

Court of Appeals No. L-14-1216

Trial Court No. 14241314

**DECISION AND JUDGMENT**

Decided:  October 23, 2015

* * * * *

Brett A. Klimkowsky and Kyle J. Bristow, for appellant.

Julia R. Bates, Lucas County Prosecuting Attorney, and
Chynna L. Fifer, Assistant Prosecuting Attorney, for appellee.

* * * * *

**OSOWIK, J.**

**{¶ 1}** This is an appeal from a judgment of the Lucas County Court of Common

Pleas, Juvenile Division, in which appellant, J.A., was found to be a delinquent child in

violation of R.C. 2907.02, which sets forth the crime of rape.  On appeal, appellant sets

forth the following assignment of error:

Appellant suffered ineffective assistance of counsel during Appellant's case-in-chief at the trial court due to (1) Appellant's trial attorney neglecting to properly communicate with Appellant prior to trial in order to properly prepare for it, (2) Appellant's trial attorney failing to properly introduce evidence at trial to evince that a third-party is likely to be the culprit of the offense, and (3) Appellant's trial attorney failing to properly raise an alibi defense.

{¶ 2} On May 28, 2014, S.P. went to the house of appellant's mother, A.D., to pick up three of her six children, who had been staying with A.D. for approximately four days. On the way home one of the children, three-year-old R.S., began to complain of pain in her rectal area while she was seated in her car seat. Later, at home, the child began crying when she tried to use the toilet. R.S. told her mother that appellant, who was 17 years old at the time, "put his wee-wee in her butt."

{¶ 3} S.P. took her daughter to the emergency room at Toledo Hospital, where she was examined by Amber Showman, a trained sexual assault nurse examiner ("SANE"). R.S. repeated the statement about appellant to Showman, after which Showman examined her. As part of the examination, Showman swabbed R.S.'s rectal area for evidence to be used in DNA testing, and took pictures of what appeared to be a rectal tear.

{¶ 4} Toledo Police Detective Rebecca Kincaid referred the case to Randall Schlievert, M.D., director of the Child Abuse Program at Mercy Hospital, who examined R.S. During the examination R.S. said that she knew appellant, and that he had "hit her."

R.S. did not repeat her earlier statements of sexual abuse, and a physical examination performed by Schlievert revealed that R.S.'s injuries had healed.

{¶ 5} On June 17, 2014, Detective Kincaid interviewed appellant. During the interview, appellant stated that he may have digitally penetrated R.S.'s rectum with his finger several months earlier, while he was cleaning her after a toilet accident. When Kincaid asked appellant for a DNA sample to rule him out as a suspect, he complied. DNA testing revealed that appellant's DNA was not on any of the samples collected by Showman. On June 26, 2014, Kincaid filed a supplemental report in which she stated that "[t]he suspect admits to digitally penetrating [the victim's] rectum."

{¶ 6} On July 1, 2014, two complaints were filed against appellant. The first complaint, case No. 14241314 01, stated that:

[Appellant] did have sexual conduct with three years old victim * * *, by putting his finger into her rectum. This was admitted to by the [appellant] when he was interviewed by Detective Kincaid.

Contrary to and in violation of 2907.02(A)(1)(b) of the Ohio Revised Code, Rape, a felony of the first degree.

The second complaint, case No. 14241314 02, stated that:

[Appellant] did have sexual conduct with three years old victim * * *, by putting his penis into her rectum. This was disclosed by the victim to her mother and medical findings were consistent with the disclosure.

3.

Contrary to and in violation of 2907.02(A)(1)(b) of the Ohio Revised Code, Rape, a felony of the first degree.

{¶ 7} On August 6, 2014, a hearing was held before a juvenile court magistrate at which testimony was presented by S.P., Showman, Schlievert, Kincaid, and A.D. S.P. testified that she is the mother of six children, and that R.S. is her fifth child. S.P. said that when she went to A.D.'s home to return a cell phone, she saw R.S. walk out of appellant's bedroom. S.P. said that, at the time, appellant was in the bedroom with another child. S.P. stated that she decided to take all three children home at that point. On the way home, R.S. complained of pain from sitting in the car seat. S.P. said that she took R.S. to the hospital after the child began screaming with pain when she tried to use the toilet at home.

{¶ 8} On cross-examination, S.P. testified that she left her three children with A.D. for several nights because she had to take her husband to physical therapy. She also testified that A.D. babysat her children many times in the past and that, usually, R.S. is happy to go to A.D.'s house. However, the night she picked up the children, R.S. was "nervous" and "upset."

{¶ 9} Showman, a registered nurse, testified that she is certified as a SANE examiner, which involves interviewing alleged victims of sexual abuse and collecting evidence. Showman stated that she examined R.S. with her mother present. Showman noted several injuries, one of which was a laceration of the tissue between R.S.'s anus and her vulva, in an area known as the "fourchette." Showman also said that R.S. would

4.

not allow her to clean off stool from her rectal area, and that she was not able to perform a complete internal examination because the child was in too much pain. Showman said the injury appeared to be caused by "blunt force trauma." On redirect, Showman testified that R.S.'s injuries were not consistent with a spanking.

{¶ 10} Schlievert testified that he is board certified in child abuse and neglect, and is recognized in Michigan as an expert in child abuse. Schlievert said that he examined R.S. at Kincaid's request and that the exam, which was performed on June 18, 2014, was "normal." On cross-examination Schlievert said that R.S. "did not disclose any sexual conduct perpetrated upon her." On redirect, he clarified that such non-disclosure is not abnormal in a young child.

{¶ 11} Kincaid testified that she is a Toledo Police Detective assigned to the Special Victims Unit, which investigates child sex abuse crimes. Kincaid stated that she interviewed appellant and R.S., and spoke to S.P. as part of her investigation. On cross-examination, Kincaid stated that appellant admitted that, four months earlier, he may have accidentally inserted his finger into R.S.'s rectum while he was cleaning her. Kincaid also stated that appellant agreed to a DNA test to rule him out as a suspect. However, appellant was not ruled out as a suspect, even though his DNA was not found on R.S.

{¶ 12} On redirect, Kincaid testified that DNA is not always present on a rape victim, even when there is a physical injury present. She also testified that appellant denied inserting his penis into R.S.'s rectum. She said that she did not hear R.S. accuse

5.

appellant of rape, and it is possible that R.S. said appellant "hurt her" in response to Kincaid asking if appellant ever spanked R.S.

{¶ 13} After Kincaid's testimony, the state rested its case. Appellant's attorney made a motion for acquittal pursuant to Crim.R. 23, which the trial court denied. The defense then called appellant's mother, A.D., to testify on appellant's behalf.

{¶ 14} A.D. testified that five of her six children, including appellant, live in her home. She also testified that, although appellant has his own bedroom in her home, the doorways are covered with blankets because none of the bedrooms have actual doors. A.D. stated that appellant spends "a lot" of his time at a friend's house after school each day, and her nephew, E.D., also stays at her home.

{¶ 15} A.D. said that S.P. is her best friend, and she babysits S.P.'s children often. She also said that, although S.P. originally said that R.S. and her siblings would stay one night at A.D.'s house, they actually stayed four nights. A.D. testified that she was at a neighbor's house when S.P. came to pick up the children, and that appellant, R.S. and one other child were playing video games in appellant's room when S.P. arrived. She said that R.S. was never alone with appellant, although appellant would occasionally clean up messes made by the children and sometimes changed the smaller children's diapers. She denied ever seeing appellant abuse R.S.

{¶ 16} On cross-examination, A.D. stated that she never left any of her own children alone with other children because of her nephew, E.D. However, she also stated that E.D. was not in the home when S.P. came to pick up her children.

6.

**{¶ 17}** After A.D.'s testimony was concluded, the defense rested, and the state presented rebuttal testimony by S.P. S.P. testified that she went to A.D.'s house on May 28, 2014, to drop off A.D.'s cell phone, which had been left in her car. S.P. said that appellant, another one of her children and R.S. were in appellant's room when she arrived. None of A.D.'s children were present except for appellant. At that point, the state rested and closing arguments were presented to the trial court. Appellant did not make a statement to the trial court on his own behalf.

**{¶ 18}** After reviewing all of the evidence, the magistrate found that the state proved "beyond a reasonable doubt that [appellant] is delinquent of Count 2, rape." Count 1 of the complaint was dismissed. The case was continued for disposition, and appellant was referred to probation and to the sex offender treatment program ("SOT") for assessments and recommendations.

**{¶ 19}** On September 11, 2014, a disposition hearing was held at which the prosecutor expressed disagreement with Probation Officer Julie Henry's recommendation that appellant be placed in a group home. The prosecutor further stated that, due to the difference in age and size of appellant and his victim, and also the seriousness of the crime and the danger to the public, the state would recommend commitment to the Department of Youth Services for one to three years, up to age 21. Appellant's attorney asked the magistrate to place appellant in a group home, so that he might be rehabilitated and "hopefully reintegrate with society and not reoffend * * *."

7.

**{¶ 20}** When questioned, appellant's mother told the magistrate that appellant is "an amazing kid." She further stated that appellant was in 11th grade where he has an academic "IEP," and he follows rules at home. Appellant's father stated that appellant is "a good kid" who "stays out of trouble." The victim's mother then stated that, since the attack, R.S. is afraid of "monsters" and must be re-trained to use the toilet. She also stated that "my daughter is very awesome, which might have been messed up now, and that's all I can say."

**{¶ 21}** After the above statements were made, the magistrate stated that "this is a very, very serious offense," and noted that, although appellant was 17 years old, he lacked the "typical maturity of a 17 year old." The magistrate further stated that sex offender treatment is not available through DYS, and noted that appellant had already been detained for 70 days leading up to the trial. The magistrate found that, while the incident in question was "no accident," as appellant claimed, nevertheless commitment to DYS would not give appellant an opportunity for rehabilitation. Accordingly, the magistrate committed appellant to DYS for three months, but stayed that commitment and ordered him placed in a group home. Appellant was ordered to attend school, and participate in an SOT program. Appellant was also placed on probation, classified as a Tier I sex offender, and ordered to have no further contact with R.S. The trial court conducted an independent review of the magistrate's decision and adopted it on October 10, 2014. A timely notice of appeal was filed in this court on October 14, 2014.

8.

{¶ 22} In his sole assignment of error, appellant argues that he received ineffective assistance of trial counsel because counsel failed to communicate with appellant and his mother prior to trial. Appellant further argues that, if counsel had communicated with him, counsel would have been able to present an alibi defense and to argue that R.S. may have been raped by appellant's cousin, E.D., who is a convicted sex offender.

{¶ 23} Attached to appellant's brief is his own affidavit and that of A.D., in which they state that appellant and A.D. met with trial counsel "only once prior to the trial" after which counsel refused to return A.D.'s phone calls or to come to prison to meet with appellant. Also attached to appellant's brief is a copy of E.D.'s arrest record, which shows that E.D. was convicted of unlawful sexual conduct with a minor in January 2014.

{¶ 24} We note initially that a claim of ineffective assistance of counsel that requires consideration of evidence that is outside the trial court's record "is not appropriately considered on a direct appeal." *State v. Hartman*, 93 Ohio St.3d 274, 299, 754 N.E.2d 1150 (2000), citing *State v. Madrigal,* 87 Ohio St.3d 378, 390-391, 721 N.E.2d 52 (2000). Accordingly, to the extent that they were not made a part of the trial court's record, we cannot consider the affidavits and other documents that are attached to appellant's brief.

{¶ 25} As to appellant's remaining argument, in order to prevail on a claim of ineffective assistance of counsel, a defendant must prove two elements: "First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the 'counsel'

guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Proof of prejudice requires a showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id*. at 694; *State v. Bradley*, 42 Ohio St.3d 136, 538 N.E.2d 373 (1989), paragraph three of the syllabus.

{¶ 26} In reviewing trial counsel's actions under the above standard, we must keep in mind that "trial counsel is entitled to a strong presumption that his or her conduct falls within the wide range of reasonable assistance. * * * Hindsight is not permitted to distort the assessment of what was reasonable in light of counsel's perspective at the time, and a debatable decision concerning trial strategy cannot form the basis of a finding of ineffective assistance of counsel." *State v. Conley*, 2d Dist. Montgomery No. 26359, 2015-Ohio-2553, ¶ 55.

{¶ 27} As to whether counsel failed to communicate with appellant and properly prepare for trial, it is undisputed that trial counsel met privately with appellant and his mother at least once. The record also shows that appellant, his parents and his attorney were present at pretrial conferences held on July 18 and 24, 2014. As to whether counsel failed to investigate the possibility that a third party, E.D., could have been blamed for the offense, the trial transcript contains A.D.'s testimony that E.D. lived in her home, and even shared a room with appellant at the time that the instant offense took place. As stated above, evidence of E.D.'s prior conviction for sexual abuse is not in the trial

10.

court's record and therefore cannot be considered by this court on appeal. As to whether counsel failed to establish that appellant had an alibi defense, A.D. testified that appellant frequently spends large amounts of time at a friend's house. However, A.D. also testified that appellant was home on May 28, 2014, and that he played video games with R.S. in his room before her mother picked her up.

**{¶ 28}** On consideration of the foregoing, this court finds that appellant has not established that counsel's performance was due to anything other than trial strategy, or that it was so deficient and/or unprofessional that, but for counsel's alleged errors, the result of his trial would have been different. Accordingly, we cannot say that appellant received ineffective assistance of trial counsel. Appellant's sole assignment of error is not well-taken

**{¶ 29}** The judgment of the Lucas County Court of Common Pleas, Juvenile Division, is hereby affirmed. Appellant is ordered to pay the costs of this appeal pursuant to App.R. 24.

Judgment affirmed.

A certified copy of this entry shall constitute the mandate pursuant to App.R. 27. *See also* 6th Dist.Loc.App.R. 4.

Mark L. Pietrykowski, J.          _____
                                                          JUDGE
Thomas J. Osowik, J.

James D. Jensen, J.               _____
CONCUR.                                                    JUDGE

                                  _____
                                                          JUDGE

This decision is subject to further editing by the Supreme Court of
Ohio's Reporter of Decisions.  Parties interested in viewing the final reported
version are advised to visit the Ohio Supreme Court's web site at:
http://www.sconet.state.oh.us/rod/newpdf/?source=6.